Filed 5/11/23  In re E.B. CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re E.B., a Person Coming Under the Juvenile Court Law. | D081478 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J520063) |
| v. | |
| J.C., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Alexander M. Calero, Judge.  Conditionally reversed in part and remanded with directions.

Lelah S. Fisher, under appointment by the Court of Appeal for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Emily Harlan, Deputy County Counsel, for Plaintiff and Respondent.

J.C. (Father) appeals the juvenile court's order adopting a permanent plan of guardianship for his daughter, E.B., under Welfare and Institutions

Code[1] section 366.26.[2] The sole issue on appeal is whether the San Diego County Health and Human Services Agency (Agency) and the juvenile court failed to conduct an adequate initial inquiry under section 224.2 into E.B.'s possible Native American ancestry, as defined by the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.). The Agency concedes it did not conduct an adequate initial inquiry but contends the error is harmless. We accept the concession but disagree the error is harmless. Applying the standard of prejudice set forth in *In re Benjamin M.* (2021) 70 Cal.App.5th 735 (*Benjamin M.*), we conclude that the record reveals the existence of readily obtainable information from extended family members likely to bear meaningfully on whether the child is an Indian child. Because the Agency failed to inquire of the available extended family members, we conditionally reverse the court's ICWA finding and remand the matter for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND[3]

In June 2019, the Agency filed a section 300, subdivision (b)(1) dependency petition for eight-year-old E.B., alleging that she had been sexually abused by Father or there was substantial risk of sexual abuse.

Both parents indicated they had no known Native American ancestry in their ICWA-010 forms and again when asked by the Agency.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] M.B. (Mother) is not a party to this appeal.

[3] Because Father's sole contention on appeal challenges the Agency's compliance with its section 224.2, subdivision (b) initial inquiry duties, we limit our discussion of the facts and procedural history to information necessary to determine that issue.

At the June 2019 detention hearing, the trial court found the Agency made reasonable inquiry into E.B.'s Native American ancestry and ICWA did not apply. The court detained E.B. and ordered reunification services for parents.

The parents engaged in reunification services, including individual therapy. The therapist reported Father showed no empathy toward E.B., blamed E.B. for her own removal, and accused E.B. of being a " 'pathological liar.' " Father denied the allegations of sexual abuse. Mother stated the dependency case was an " 'injustice' " to her family and denied E.B. was sexually abused. The Agency concluded that Mother's inability to believe E.B. was affecting E.B. emotionally and behaviorally. Both parents failed to reunify with E.B. and reunification services were terminated.

Between July 2020 and December 2021, the Agency spoke with a maternal uncle or cousin[4] over the phone about possibly being E.B.'s caregiver; it received contact information for a maternal aunt; and it had contact with seven other maternal relatives (six maternal aunts plus a "maternal relative") during a child and family team meeting. But the record does not indicate that the Agency asked any of them about the family's Native American ancestry. The Agency nevertheless concluded that ICWA was inapplicable in its August 2020 and April 2021 reports. At the six- and 12-month review hearings, the court found that the Agency reasonably inquired into E.B.'s possible Native American ancestry and that ICWA did not apply.

The Agency placed E.B. with the maternal uncle or cousin and his wife in March 2022. The caregivers said they were willing and committed to being

---

[4]    The record is conflicting as to whether J.R. is Mother's uncle or cousin. We are unable to discern from the conflicting record which is correct.

E.B.'s legal guardians. In its January 2023 report, the Agency recommended that they be E.B.'s legal guardians.

At the contested section 366.26 hearing on January 5, 2023, the juvenile court again found without prejudice that ICWA did not apply. It also selected a permanent plan of legal guardianship for E.B., appointed the relative caregivers as her guardians, and terminated jurisdiction.

Father appealed.

## DISCUSSION

In dependency proceedings, the juvenile court and the Agency have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a).) "This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.) If a child is placed into the Agency's temporary emergency custody under section 306, the initial duty of inquiry includes "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).)[5] ICWA defines " 'extended family member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the

_____

[5]    If the initial inquiry reveals a reason to believe the child is an Indian child, then further inquiry into whether there is a reason to know the child is an Indian child is required. (*In re D.F.*, *supra*, 55 Cal.App.5th at pp. 566–567.) If there is reason to know that a child is an Indian child (§ 224.2, subd. (d)), then notice must be sent to the pertinent tribe to allow the tribe to make a determination regarding the child's tribal membership. (*In re D.F.*, at pp. 567–568.) Further inquiry is not an issue on this appeal.

4

age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); § 224.1, subd. (c) [" 'extended family member' . . . defined as provided in [§] 1903" of ICWA].)

The Agency concedes that under section 224.2, subdivision (b), "it had a duty to conduct initial ICWA inquiry of available extended family members because E.B. was taken into temporary emergency custody by law enforcement and the Agency pursuant to section 306." (See *In re Robert F.* (Apr. 12, 2023, E080073) ___ Cal.App.5th ___ [2023 Cal.App. LEXIS 277] [duty to inquire of extended family members under section 224.2, subdivision (b) is triggered only when the child is taken into temporary emergency custody under section 306].) The Agency also concedes that under section 224.2, subdivision (c), "the juvenile court should have inquired of the maternal uncle (or cousin) and his wife at the hearings at which they appeared."

We agree and accept the Agency's concessions. During the dependency proceedings, the Agency had contact with the maternal uncle or cousin and his wife; it had contact information for one maternal aunt; and it had in-person contact with seven other maternal relatives at the child and family team meeting. Nothing in the record suggests the Agency ever asked these extended family members about the family's Native American ancestry. We therefore conclude that there is insufficient evidence to establish the Agency adequately fulfilled its initial ICWA inquiry obligations, and the juvenile court erred in finding that ICWA did not apply. (See, e.g., *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744 [failure to ask father's known relatives about possible Indian ancestry violated ICWA requirements].)

The parties dispute whether the error was harmless. The Courts of Appeal have applied varying analytical frameworks to evaluate whether ICWA initial inquiry errors are prejudicial or harmless. We need not address these various approaches because this division has adopted the approach articulated in *Benjamin M.*, *supra*, 70 Cal.App.5th 735. (*In re Y.M.* (2022) 82 Cal.App.5th 901, 916 (*Y.M.*).) Under that standard, "a court must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) The "standard does not require 'proof of an actual outcome (that the parent may actually have Indian heritage).' [Citation.] The missing information need only be relevant to the ICWA inquiry, 'whatever the outcome will be.' " (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 679; *id.* at p. 680 [applying *Benjamin M.* standard and finding reversible initial inquiry error where agency "asked the parents about Indian ancestry" but "failed to ask extended family members about it"].)

On this record, we cannot say the Agency's failure to comply with its initial inquiry duties was harmless. Extended family members were readily available and their responses would likely have borne meaningful information, regardless of the outcome of the inquiry. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) Moreover, the fact that the parents denied any Indian heritage does not relieve the Agency of its "broad duty" to inquire of readily ascertainable extended family members whether the child is an Indian child. (*In re Y.W.* (2021) 70 Cal.App.5th 542, 554.) A contrary rule would "ignore[ ] the reality that parents may not know their possible relationship with or connection to an Indian tribe." (*Ibid.*; *In re S.R.* (2021)

6

64 Cal.App.5th 303, 314 ["the children's parents apparently had no idea of their family's connection to the . . . tribe . . . , even though the children's great-grandmother was a member"]; see also *In re T.G.* (2020) 58 Cal.App.5th 275, 295 [noting that ICWA's "expansive" duty of inquiry "is premised on the commonsense understanding that, over time, Indian families, particularly those living in major urban centers . . . , may well have lost the ability to convey accurate information regarding their tribal status"]; *In re Rylei S.* (2022) 81 Cal.App.5th 309, 321–322 [same].) Thus, we conditionally reverse the juvenile court's ICWA finding and remand the matter for the limited purpose of ensuring compliance with the ICWA inquiry obligations.

Given the importance of expediency and need for finality, we encourage the parties to stipulate to immediate issuance of the remittitur in this case. (Cal. Rules of Court, rule 8.272(c)(1).)

DISPOSITION

The juvenile court's finding that ICWA does not apply and the portion of its order of January 5, 2023 terminating jurisdiction are conditionally reversed. The matter is remanded to the court with directions to comply with the inquiry provisions set forth in section 224.2, subdivision (b). If, after determining that an adequate inquiry was made by the Agency consistent with the reasoning in this opinion, the court finds that ICWA applies, the court shall vacate its existing order approving the plan of permanent guardianship and proceed in compliance with ICWA and related California law. If the court instead finds that ICWA does not apply, it shall reinstate its ICWA finding and its order terminating jurisdiction. In all other respects, the court's order of January 5, 2023 is affirmed.

BUCHANAN, J.

WE CONCUR:


McCONNELL, P. J.


DATO, J.

8